Innovations Ltd. Mr. Hoffman, you're reserving four minutes of your time for rebuttal. Yes, Your Honor. Is that correct? Yes, Your Honor. Okay. So, first, the court wants to address the motion that was filed last week, and Kingston has moved, it's filed a contingent motion in view of the court's decision in Arthrex. Basically you're arguing and you want the, you want to fall within the Arthrex scope and you want to argue the constitutionality arguments that we just heard. We also issued a precedental order last week in Custom Media Technologies, and there we concluded that Custom Media, in that case, it forfeited its employment clause challenge on the basis that it did not raise it in the brief. We have the same situation in this particular case, and on the basis of the court's decision in the order that I decided, your motion is hereby denied. So let's go on with the merits of the case. Thank you, Your Honor. Your Honor, David Hoffman, on behalf of Kingston, may it please the court. Polaris, in their response to our opening brief, describes KSR as an 11-year-old case and seeks to downplay its relevance throughout the briefing, but KSR is the binding Supreme Court precedent. Well, let's go to the, let's go to the blue brief. On page 20, you argue that the PTAP, pardon me, I've got a pet cough, erroneously refused to tie its analogous arch pet to the claims of the 454 pet, and you premise this argument on the court statement in KSR that an obvious misdetermination has to be tied to the objective breach of the claim. Can you cite to any legal authority that specifically narrows the scope of prior art to what's disclosed in the patent, in a patent's claims? I believe KSR does, but more specifically, WIRES, Your Honor. WIRES says that in citing to KSR, and I'll read it, it describes the analogous art analysis as being a, the Supreme Court's decision, this is from WIRES, Your Honor, 1238. The Supreme Court's decision in KSR, and then cites it, directs us to construe the scope of analogous art broadly, stating that familiar items may have obvious uses beyond their primary purposes, and an ordinary person of skill often will be able to fit the teachings of multiple patents together, like pieces of a puzzle. I believe that that reflects an endorsement of KSR's approach to looking at obviousness that applies not only to, do we combine A plus B, but what is analogous art? If you, as we note in our brief, Your Honor, if you... Is it impermissible hindsight to narrow the scope of prior art to what the claims disclose? No, Your Honor, I don't believe it's impermissible hindsight. But in the same way, it's not impermissible hindsight to narrow the obviousness inquiry, as KSR says, to the scope of the claims. If you allow the disclosures in the specification to drive what is or is not prior art, you are setting up a dual system where the accused infringer can be found to infringe for specific details that are present only in the specification, but not in the claims. And that prevents a fundamental injustice of the system. The scope of the prior art should not be narrower in scope than the scope of what can invalidate the patent potentially. Does that answer your question, Your Honor? Well, it's there. Going back to the first principles of analogous art, we believe that KSR really stands for two fundamental propositions with regard to obviousness, and that are that obviousness, the obvious analysis is not narrow in its concept, and it should focus objectively on what is still in the art and what is claimed, as opposed to being subjective of what the inventor himself believed was his invention. For example, I said KSR tells us that in determining whether a subject matter of a patent is obvious, neither the particular motivation nor the avowed purpose of the patentee controls, and yet that is specifically what the board did here. They looked to the specification for, as they said, the subjective belief of the inventor and what the inventor believed was his invention, as opposed to looking at the objective claims and what they're directed to, and we believe this is legal error. There is no basis for further constricting the scope of prior art narrower than what KSR provides in the scope of analogous art. Analogous art is contrary to what my friend would assert in his brief. Analogous art is not a separate test from obviousness. It doesn't come before. Analogous art is a legal construct that is part of determining the scope and content of the prior art, so you do not first determine analogous art and then somehow separately then apply KSR. KSR applies to the whole kit and caboodle, your honors. On page 40 of the blue brief, you say that the board also implied that Kingston may have argument, and you say those were proper reply. Can you cite any legal authority to support your assertion that those arguments are proper reply? They seem pretty new to me. I think it's important to put those in context, your honor, and again, this is switching off the analogous art. The purpose of those reply, I mean, were they proper reply arguments, and I don't have a physical or case, but I think if I explain them in context, you will see, your honor, that they were about reply and not about new arguments. Essentially, what happened is we asserted it was obvious, there was a finite number of solutions, and notably, to this point, no one has identified any more than really the four finite solutions, both top, both up and down, both side to side, alternating, or pinwheel. In response to that, the patent owner asserted that this pinwheel pattern appeared nowhere in chips at all. Notably, in their assertion and their patent owner response, they didn't say memory chips. They simply said in chips in general, and then properly in reply, we came back and said, no, if you look at even Keel reference, again, we're not asserting it's anticipatory, but here it contradicts and simply replies to their statement that there doesn't exist anything in the art where any chips have been placed in a pinwheel formation, and that was the purpose of the reply. It wasn't to put in a new argument about that this is a teaching of a pinwheel in the context of memory chips. It was to show that their assertion that it never happened before was a flawed one, and I believe it was a proper reply. If you had better prior art using the pinwheel design in memory chips, why didn't you put it in there? Well, Your Honor, to be clear, we didn't have another reference that showed a pinwheel of memory chips. Now, maybe we could have made an argument of obviousness based on... I mean, you came up with a ceramic tile reference. Yes, Your Honor. Which has nothing to do with memory chips, and the board found it non-analogous. Isn't that a substantial evidence question? I don't believe it's a substantial evidence question here, Your Honor, because if you look at the reason the board came to that conclusion is by looking at the test for analogous art and determining what is reasonably pertinent to the problem. If you look at the institution decision, the board originally found that the geometric patterns, we call them tiles, they're just geometric patterns of small rectangles. The geometric patterns in the bridge reference were reasonably pertinent to the problem of the geometric placement of chips. It's only when you change that problem do you get into the issue with whether or not it's a factuable problem. You have to analyze properly. They can change their mind from the institution decision, though, and say a reference showing the arrangements of ceramic tile is not reasonably pertinent to chip design. I think they can, Your Honor, but they did not do that. If they had kept the problem correct and said that the problem was directed just to geometry and then it reached a different factual finding, Your Honor, I would definitely agree that is when they're purviewed. But their factual finding is premised on an incorrect evaluation of the problem. It's only when they added the additional requirements of shortest possible track lengths and conductive So, I think it's, Your Honor, if we move ahead to, we talked a little bit about whether or not single reference obviousness would apply. I think it's significant, as I noted, to point out that the board made no finding or identified no option besides the four that have been identified. As we note in our brief, the simple rearrangement of components position has been held to be legally obvious. And here you have a limited number of top and bottom, and there is no sort of rational argument. Now that you've taken this into ceramic tiles, we could have an entire terrazzo mosaic. No, Your Honor, but I think going back to the ceramic tiles, again, as we note in our This is not out of nowhere. There is a reference that was cited to the board, the Giacomo reference, which calls the placing of chips on a board the tile-fitting problem, and that would be within the knowledge of a person of skill in the art. Ultimately, what you're doing whenever you place chips on a board is you're fitting rectangles into a confined space, and a person of skill in the art would understand, have an understanding of those tile patterns. Yes, they're from ceramics, but as so KSR counsels, when you look at what a person of skill in the art would apply, you can look at things like their own experiences and their common sense. A person of skill in the art obviously works in offices. There's got to be a reason. There's got to be a reason why a person would look in a do-it-yourself booklet on placing ceramic tiles. I think there is a good reason. Again, Giacomo points to this being the tile-fitting problem, but also I think contrary to what Polaris would assert, you don't need to go to a library looking for a particular book. One of skill in the art would have this knowledge, this hypothetical knowledge within their head already. And so the question is when they look at... That's true, but that's if it's analogous. If it's not analogous, and if that's the issue, then the question is, you know, should it look elsewhere, especially in a situation like this, in a booklet on do-it-yourself placement of ceramic tiles, when you're talking about a pose that's struggling with the placement of memory chips inside of an array. I absolutely agree, Your Honor, and I think that that is the issue, but we believe it is analogous. So if the art is analogous because it is under KSR, directed to the scope of the claims, the problem in the claims, then those patterns are within a person of one's skill in the art's head. So you're saying basically anything that shows geometric designs and placement of geometric designs is relevant here, and that it would have been obvious for people to go out and search it here? I don't think it's as broad... Why isn't bricklaying, for example? I don't think it's as broad as that, Your Honor. Why isn't bricklaying? Bricklaying, again, there's not a reference in the art which describes it as bricklaying. Bricklaying is not a series of rectangles in a two-dimensional pattern, it is a three-dimensional construct. That's not true if you're laying out a patio of brick, it's the same thing, it's a geometric design. In that case, Your Honor, a patio of brick, I would agree, it's a similar issue, and if you were laying out your patio with bricks, one of the skill in the art would appreciate, just like the tiles, that there are a limited number of patterns that you can fit into a particular shape of fixed dimension. Okay, you're in your rebuttal time. Thank you, Your Honor. Counselor Loewenstein. May it please the Court, Nathan Loewenstein on behalf of Polaris. You agree claim one is representative? I'm sorry? You agree claim one is representative? Not particularly. I think claims four through six, as we stated in our brief, are materially different, because let's suppose we went through this theory that we completely disagree with, that you're somehow limited to the scope of the claims. Claims four through six specifically refer to how the line track should be arrayed. There are three different proposals, so I don't agree with respect to the issues in this case that claim one is, in fact, representative. On page 40 of the red brief, you argue that neither Keel nor any other prior art reference teaches memory chips in a row with alternating orientations. On page 18 of the gray brief, Kainston says your argument sets the bar for the hypothetical obviousness inquiry too high by requiring evidence of actual artisans having combined references so that you confuse anticipation with obviousness. Does your position confuse anticipation with obviousness? I don't believe so. Certainly, it's not our position that they can only show anticipation in nothing but they could have tried to show obviousness over a single reference. I think you're referring to their Keel ground. And I think that really raises the issues that are present in Arendi and DSS and other decisions from this court, where you have obviousness over a missing limitation, and not just that, a missing limitation that goes to the core of the invention, the heart of the invention, I think is the phrase that's used in Arendi. And this is, if anything, it's the heart of the invention. And I'm not saying that they couldn't have shown obviousness, I'm just saying that they didn't. If there's nothing else, I'll just make a few brief points. I think your Honor's questions in opening were addressing a lot of the issues that I was going to touch upon. But just to sort of take a step back, I think Bridge is the quintessential art that the analogous art test is meant to exclude. I think Judge Reyna described the applet. It's not really a ceramic tile reference. It's a book, a 226-page book for a do-it-yourselfer who's going to go to Home Depot and then lay bathroom tiles in their home. And the question you should ask yourself is, would a memory module designer at Samsung or Intel or one of those companies, would they go to that reference to solve this problem? I don't think so. Their expert didn't think so. Our expert didn't think so. The board didn't think so. There's no evidence that anyone would think that. It's not our point that KSR is an 11-year-old case. Our point is that KSR was decided 11 years ago, and if it was meant to spur some sea change in the law of analogous art, it would have been felt by now. We cited six cases from this court in the wake of KSR, each of which applied the analogous art test, much as it has been for years. I submit that if you read every single analogous art case that this court has ever decided or that its predecessor court has ever decided, you will never find any reference as far afield as Bridge to have ever been found to be prior art. Even setting aside Bridge, which I think you have a pretty good argument on, why is it this just obvious to try, and why isn't Kiel good enough alone? I mean, it does seem like memory chips have a fairly finite number of ways to arrange these things. I mean, is it just – is the problem just that they didn't get a good enough expert opinion to convince the board that that was true? Well, I believe in intelligent biosystems – I'm not mistaken, I believe two of you were judges in that case – what Your Honors held was that the petitioner must make its case in the petition. So what did – appellant now – what did they say in their opening petition? They said there are a finite number of ways to do this full stop. They didn't say what they were. They didn't say – provide any evidence that there's a finite number of ways. They provided a rubber stamp declaration that verbatim copied the same exact thing. So yes, they could have said there are a finite number of ways and they could have proved it and they could have shown why it would have been obvious to try, but they didn't do that. Or they could have attempted to do that, is what I'm saying. So I believe, unless there's something else that you really want to hear from me on, I think you're seeing it the right way and I'm happy to address anything else. Okay. Thank you very much. Mr. Salzman, we'll put you back for four minutes. Thank you, Your Honor. If you need us. Addressing the points that my friend raised, we don't believe this – we're asking for a seed change in the law of KSR. In fact, if you look – in the law of analogous art, if you look back at the last 11 years of cases, what you see is rulings that are consistent with KSR, they just don't use KSR as the basis. For example, they rely on the specification, but as we pointed out in seven to eight of our gray brief, it's the same scope between the specification and the claims. There isn't – there hasn't been a case that we've seen where this issue specifically of having a difference in scope between the specification and the claims was at issue. And in fact, recognizing this won't require – wouldn't require a change in any of the prior cases that were decided. It simply explains in a situation where the scope of the claim is broader than the scope of the specification that the KSR rule applies. So it doesn't require a change to what happened in the past. I do believe that there is a sliding scale in the amount of disclosure and evidence required to make a simplistic geometric argument regarding obviousness to try. That was an argument made in the opening brief, that it would be obvious. As we've noted, that there has been no more than four patterns identified by either the what those were in reply. As I noted, we did. In this situation, what you have is whether you look at it through the patterns in the entire book, which we believe show basic geometry or just what one of us in the art would know, ultimately when you look at claim one, there is no real dispute that that's a memory module where everything on that module was known in the prior art, save the way you organize little rectangles. There's no requirement in claim one for any wiring or anything beyond placing rectangles. And so the question for the board and was whether or not that mere arrangement of parts where you only have so many ways you can do that, even playing with bricks on a patio or tiles or Legos. There are only so many ways in which that can be done. And a personal skill in the art would readily come upon the pinwheel pattern when they are required to place these small rectangles in a confined space. And allowing a patent to go forth on this essentially allows a petitioner, a patent donor, excuse me, to get a patent on basic geometry. But the problem was more than just placement, right? I mean, it also dealt with placement in a manner where you had greater economy and the circuitry involved. It did in the specification, Your Honor, but claim one does not require a greater economy in the circuitry. And indeed, an accused infringer could be found to infringe even if they didn't have greater economy. In that situation, you have the specification driving the claim. Informing the claim, Your Honor, yes. You have the specification defining the claim. But I don't believe there's been an argument here that any element of the specification defines a term in the claim in such a way that a particular wiring would be required to practice that claim. Indeed, I expect that this, you know, goes back to litigation, that Polaris would be taking the position that irregardless of whether or not the signals arrive as soon as possible or the track lengths are as short as possible, that a memory module infringes by virtue of solely its geometry. And so the only issue here is whether or not geometry in the face of, you know, prior reference as everything else makes something patentable. We're out of time. We thank you very much for your argument. Thank you, Your Honor. We thank the parties for their arguments this morning. Our next case is...